**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Case No. CCB-02-0410-3 |
| MICHAEL LAFAYETTE TAYLOR. | |

## MEMORANDUM

Now pending before the court are Michael Lafayette Taylor's motions for compassionate release and for resentencing under Section 404 of the First Step Act. Taylor is currently serving a sentence of life imprisonment without the possibility of release for crimes he committed as a teenager. Given intervening developments in charging practices in this District, judicial discretion in sentencing, and the role of youth in criminal punishment, Taylor's sentence is dramatically out of step with the sentence he would face were he sentenced today. Accordingly, the court will grant Taylor's motion and modify his sentence to a total term of thirty-five years imprisonment.

## BACKGROUND

On October 1, 2003, Taylor was charged, alongside two co-defendants, for his role in a drug trafficking organization known as the "Lexington Terrace Boys." *See* Third Superseding Indictment, ECF 181. The indictment charged Taylor with one count of conspiracy to distribute fifty grams or more of crack cocaine under 21 U.S.C. §§ 841, 846 (Count One); two counts of using a firearm in furtherance of a drug-trafficking crime resulting in death under 18 U.S.C. § 924(j) (Counts Six and Seven); one count of witness tampering under 18 U.S.C. § 1512(b)(3) (Count Eight); and made a special finding that Taylor was eligible for the death penalty on Counts

1

Six and Seven. *See id.* A jury convicted Taylor on Counts One, Six, and Eight. *See* Jury Verdict, ECF 373; Judgment, ECF 433.[1]

Taylor's convictions stem from his role in the Lexington Terrace Boys, a drug conspiracy known for distributing crack-cocaine in a "six-square-block neighborhood in West Baltimore" known as "Lexington Terrace." *United States v. Foster*, 507 F.3d 233, 237 (4th Cir. 2007). As a member of the Lexington Terrace Boys, Taylor started selling crack-cocaine in the neighborhood's "open-air drug market" at around age fifteen, with his participation escalating to serious crimes of violence by the time he turned eighteen. *See id.* at 237-38.

The first of these crimes, the so-called "Calhoun Street murders," involved Taylor, his co-defendant Keon Moses, and a third Lexington Terrace Boys member, Marcus Baskerville. *See id.* at 238-240. Moses had for some time been relying on members of a neighboring gang as suppliers, but after Moses "had a falling out" with one of these suppliers, he, Taylor, and Baskerville hatched a plan to rob the suppliers' stash house. *Id.* at 239.

At the stash house, the Lexington Terrace Boys encountered three members of the supplying gang: Gregory Spain, Ronald Harris, and Charles Brockington. *See id.* at 238-240. The Lexington Terrace Boys, armed and masked, demanded money, drugs, and guns. *Id.* at 239. When those demands went unfulfilled, an altercation ensued. *See id.* The Lexington Terrace Boys ultimately began firing on the suppliers in rapid succession. "Moses shot Spain at least seven times," killing him. *Id.* Harris was also shot repeatedly and killed. *Id.* Taylor shot Brockington in the head and chest, but although Brockington sustained "eight gunshot wounds," he survived. *See id.* at 239-40. The Government introduced the Calhoun Street murders at Taylor's trial as evidence of an overt act in furtherance of the conspiracy—not as a discrete charge—and the jury ultimately

---

[1] Count Seven was dismissed pre-trial. *See* Oral Order, October 20, 2003.

convicted Taylor on one count of conspiracy to distribute fifty grams or more of crack cocaine under 21 U.S.C. §§ 841 and 846.

The Government did charge Taylor for the second violent crime at issue in his trial, the killing of Robert "Snoop" McManus to prevent him from testifying about the Calhoun Street murders. As a result of those murders, Moses had been arrested on state charges. McManus was a critical witness for the prosecution. *See id.* at 240. So on February 22, 2002, acting on Moses's instructions, Taylor killed McManus. *See id.* He carried out the murder execution-style, chasing McManus down before standing over him and shooting him in the head. *See id.* Taylor was convicted of using a firearm in furtherance of a drug-trafficking crime resulting in death under 18 U.S.C. § 924(j) for killing McManus.

Taylor's third violent crime also involved tampering with witnesses in the Moses trial. This time, the Lexington Terrace Boys sought to silence Brockington from testifying against Moses by attempting to abduct one of Brockington's partners and close friends, Samuel Carlos Wilder, and deliver him to the courtroom, where they planned to sit with Wilder during Brockington's testimony as a form of intimidation. *See id.* at 240. Taylor and his third federal co-defendant, Aaron Foster, sought to implement the plan on April 15, 2002, when they ambushed Wilder on a Baltimore City street. *See id.* After approaching Wilder in a vehicle, Taylor and Foster leapt out and Taylor grabbed Wilder from behind. *Id.* As Taylor and Foster tried to force Wilder into the car, however, Wilder "pulled out a gun and shot Foster," creating a distraction that enabled him to escape. *See id.* Taylor was convicted of witness tampering under 18 U.S.C. § 1512(b)(3) for attempting to kidnap Wilder.

All told, Taylor was convicted on three charges—conspiracy, use of a firearm resulting in death, and witness tampering—and the Government sought the death penalty as punishment for

his crimes. After the jury convicted Taylor, however, it elected to impose a sentence of life imprisonment without the possibility of release for his death-eligible offense. *See* Verdict, April 28, 2004; Sentencing Tr. 31:14-25.[2] The court sentenced Taylor on the remaining counts. All together, Taylor was sentenced to life without the possibility of release for drug trafficking (Count One); life without the possibility of release for killing McManus (Count Six); ten years for witness tampering (Count Eight), to run concurrent to Counts One and Six; and five years of supervised release. *See* Judgment. The court was bound to impose the jury's selected sentence on the death-eligible offense, but it also made clear that it "fully agree[d] with that verdict" because of "the severity of the crimes" Taylor had committed. *See* Tr. 31:18-25.

The court entered Taylor's sentence on July 23, 2004. After serving nearly two decades of that sentence, Taylor filed a pro se motion for compassionate release due to "extraordinary and compelling" circumstances on June 23, 2021. *See* Mot. for Compassionate Release, ECF 700. He complemented that motion with a pro se motion for resentencing under Section 404 of the First Step Act on October 12, 2021. *See* Mot. for First Step Act Resentencing, ECF 730. Shortly thereafter, this time through appointed counsel, Taylor filed a supplement to his motion for compassionate release on November 17, 2021. *See* Suppl. Mot. for Compassionate Release, ECF 733. He filed four additional supplements between March 11, 2022, and April 3, 2023. *See* Suppls. to Mot. for Compassionate Release, ECFs 741, 742, 753, 761.[3] The Government filed a response opposing Taylor's requests for relief on December 22, 2021, *see* ECF 736, and Taylor replied in

---

[2] The sentencing transcript is available as Exhibit 1 to the Government's opposition to Taylor's motion for compassionate release, ECF 736-1. It is in hereinafter referred to as "Tr."

[3] Taylor also filed a motion to seal one of these supplements, *see* ECF 752, which the court will grant.

support of his motions, *see* ECFs 739, 740. The court now proceeds to the merits of Taylor's

motions, which are ripe for review.

**ANALYSIS**

Taylor seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) or, in the alternative,

resentencing under Section 404 of the First Step Act. Under the compassionate release statute, a

court may reduce a movant's sentence for "extraordinary and compelling reasons" if the reduction

is consistent with the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A).

Fourth Circuit law permits a district court to "consider *any* extraordinary and compelling reason

for release that a defendant might raise." *See United States v. McCoy*, 981 F.3d 271, 284-86 (4th

Cir. 2020) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)). Accordingly, the

court may grant a motion for compassionate release if (1) "extraordinary and compelling"

circumstances warrant a sentence reduction and (2) such a reduction is consistent with the

§ 3553(a) factors.[4]

**I. Extraordinary and Compelling Reasons Warranting Relief**

A petitioner's sentence presents an extraordinary and compelling basis for relief if they

would "likely receive a dramatically lower sentence than the one [they are] currently serving" were

they sentenced today. *United States v. Elzey*, No. 09-cr-0288, 2022 WL 316717, at *2 (D. Md.

Feb. 2, 2022) (quoting *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020), *aff'd*

*sub nom. McCoy*, 981 F.3d 271)[5]; *see McCoy*, 981 F.3d at 286. As the court explains below, three

factors convince it that, were Taylor sentenced today, he would receive a sentence in the thirty-

year range. This represents a "gross disparity" from the sentence the court imposed and creates an

---

[4] The Government does not dispute that Taylor's motion is properly before the court.
[5] Unpublished opinions are cited for the persuasiveness of their reasoning only, not for precedential value.

extraordinary and compelling circumstance that warrants relief. *See McCoy*, 981 F.3d at 285 (quoting *United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)).

First, were Taylor sentenced today the Government almost certainly would not seek capital punishment. When Taylor was charged in 2004, however, the Government sought the death penalty for his violations of 18 U.S.C. § 924(j), using a firearm in furtherance of a drug-trafficking crime resulting in death. *See* Third Superseding Indictment. A conviction under § 924(j) is punishable "by death or by imprisonment for any term of years or for life," *Foster*, 507 F.3d at 245, and a sentencing court is "bound" to enter the sentence selected by the capital sentencing jury, *see* Tr. 31:18. After capital sentencing proceedings in this case, the jury opted to sentence Taylor to life imprisonment without the possibility of release, and the court imposed the sentence.

Over the last twenty years, however, the Government has effectively abandoned capital punishment in this District. According to Taylor, "the Government has not filed a Notice of Intent to pursue the death penalty in the District of Maryland . . . since April 8, 2008"—a fact the Government does not dispute. Suppl. Mot. for Compassionate Release at 7. With capital punishment now so "disfavored" in this District, it is "highly unlikely" the Government would pursue it were it prosecuting Taylor today. *United States v. Sappleton*, PJM-01-0284, 2021 WL 598232, at *3 (D. Md. Feb. 16, 2021) (addressing § 851 enhancements). As a result, Taylor's sentence would be now committed to the court—not the jury.

Second, the court would today no longer be bound to impose a Guideline sentence. At Taylor's sentencing in 2004, the U.S. Sentencing Guidelines bound this court to impose a sentence within its enumerated ranges. But in 2005, the U.S. Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005) that the Guidelines provide advisory—not mandatory—sentencing ranges for a court to consider as one factor in imposing a criminal sentence. So were the court sentencing

Taylor today, it would have discretion to impose an appropriate sentence under the factors enumerated in § 3553(a) notwithstanding the Guidelines range.

Third, in the years since Taylor was sentenced, the U.S. Supreme Court has placed increased importance on the role of youth in sentencing.[6] As the Supreme Court has since explained, "developments in psychology and brain science" have revealed the need to place children and adults in "constitutionally different" categories "for purposes of sentencing" because of the "diminished culpability" and increased "prospects for reform" during the stages of adolescent psychological development. *See Miller v. Alabama*, 567 U.S. 460, 471-72 (2012) (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). Although these constitutional decisions draw "the line at 18 years of age," the Court has also recognized that the "qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Roper v. Simmons*, 543 U.S. 551, 574 (2005). Adapting to this understanding, courts now "consistently reject life sentences for those who commit crimes, even heinous crimes, in the 'immaturity, irresponsibility, impetuousness, and recklessness' of youth," even in the years after a defendant turns eighteen. *See* Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471 (quoting *Miller*, 567 U.S. at 476).

As these three factors have coalesced in the years since Taylor's sentencing, courts in this District have "routinely impose[d] sentences within the thirty-year range" for youthful defendants "involved in drug-related killings." *See United States v. Williams*, CCB-07-0402, 2021 WL 3725435, at *3 (D. Md. Aug. 23, 2021) (collecting cases). Sentencing data show that the median

---

[6] *See Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010); *Miller v. Alabama*, 567 U.S. 460 (2012); *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Jones v. Mississippi*, 141 S. Ct. 1307 (2021). Taylor was sentenced on July 23, 2004, before the first of these decisions was issued.

sentence for murder in this District is 300 months,[7] and experience confirms that cases like Taylor's follow this trend. For example, in *United States v. Floyd*, this court sentenced to 360 months a defendant who was convicted of conspiring to commit murder in furtherance of a racketeering conspiracy. *See United States v. Barronette*, 46 F.4th 177, 189, 204 (4th Cir. 2022). Similarly, in *United States v. Hunter*, Chief Judge Bredar sentenced to 321 months a defendant who admitted to distributing a mandatory-minimum quantity of drugs and to shooting and killing a rival gang member in a retaliatory strike. *See* Judgment, *United States v. Hunter*, JKB-16-0363 (D. Md. June 15, 2018), ECF 706; Plea Agreement at 4, *United States v. Hunter*, JKB-16-0363 (D. Md. Oct. 3, 2017), ECF 288. Likewise, in *United States v. Weaver*, Judge Bennett sentenced to 360 months a defendant who pled guilty to the execution-style murder of another drug dealer. *See* Sentencing Tr. 49:14-50:2, 52:16-20, *United States v. Weaver*, RDB-19-0144 (D. Md. Aug. 15, 2022), ECF 214.[8]

A sentence in the thirty-year range comports with this precedent even as Taylor continues to face a Guideline sentence of life imprisonment today. Indeed, the Guideline ranges for the defendants sentenced in *Floyd*, *Hunter*, and *Weaver* each contemplated life imprisonment.[9] The

---

[7]   *See Interactive Data Analyzer*, U.S. Sentencing Comm'n, https://ida.ussc.gov/analytics/saw.dll?Dashboard. At the circuit and national level, the average is even lower: The median sentence for murder is 284 months in the Fourth Circuit and 231 months nationwide. *See Statistical Information Packet, Fiscal Year 2021, Fourth Circuit* 11, U.S. Sentencing Comm'n (2022), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/4c21.pdf.

[8]   This court has followed these examples in the context of post-conviction relief as well. For instance, in *United States v. Gray* this court granted a motion for compassionate release and resentenced to the equivalent of thirty-one years a defendant who was convicted of murder in aid of racketeering. *See United States v. Gray*, CCB-95-0364, 2021 WL 1856649, at *1, *6 (D. Md. May 10, 2021).

[9]   *See Barronette*, 46 F.4th at 211; Plea Agreement at 2, *United States v. Hunter*, JKB-16-0363 (D. Md. Oct. 3, 2017), ECF 288; Sentencing Tr. 21:2-10, *United States v. Weaver*, RDB-19-0144 (D. Md. Aug. 15, 2022), ECF 214.

defendant in *Floyd* faced, like Taylor, a Guideline sentence of life, and, like Taylor, exercised his right to take his case to trial. *See Barronette*, 46 F.4th at 187, 211. Yet after taking all the relevant factors into account, the court imposed a thirty-year sentence notwithstanding the Guideline calculation. *See id.* at 211. And although the defendants in *Hunter* and *Weaver* entered plea agreements to avoid life sentences, Taylor's only alternative to trial was accepting a deal offering a life sentence in exchange for the Government withdrawing its request for capital punishment—a Hobson's choice Taylor would no longer face and not forced upon Hunter, Weaver, or others prosecuted in today's evolved sentencing landscape. On top of this, Taylor was convicted for crimes committed at a younger age—just months over eighteen—and with a lower criminal history category—one—than any of these similarly situated defendants. For all these reasons, the court concludes that, were Taylor prosecuted today, he would likely receive a sentence "within the thirty-year range." *See Williams*, 2021 WL 3725435, at *3.[10]

A sentence in the thirty-year range represents a "gross disparity" with the life sentence Taylor is currently serving. *McCoy*, 981 F.3d at 285 (quoting *Redd*, 444 F. Supp. 3d at 723). As Chief Judge Bredar has explained, a "mandatory life sentence, however imposed, constitutes a significant sentencing disparity when considering how the modern criminal justice process" operates on defendants like Taylor. *See* Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471. Accordingly, the disparity between Taylor's sentence and the sentence he would face today, understood in the context of his particular circumstances and intervening legal developments, creates an extraordinary and compelling circumstance that may

---

[10] Taylor's conduct was, undeniably, even more extreme than that of the defendants in *Floyd*, *Hunter*, and *Weaver*. The court accounts for this in considering the § 3553(a) factors and, as discussed below, leaves in place a longer sentence for Taylor than either Floyd, Hunter, or Weaver received.

warrant a reduced sentence. The court now turns to the § 3553(a) factors to determine whether they are compatible with that result.[11]

## II. Section 3553(a) Factors

Under the compassionate release statute, the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" before reducing a defendant's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). The factors the court considers include: (1) "the nature and circumstances of the offense"; (2) " the history and characteristics of the defendant"; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, protect the public, and provide rehabilitative services; (4) the Guideline sentence; and (5) the need to avoid unwarranted sentencing disparities among similarly situated defendants. *See* 18 U.S.C. § 3553(a). Ultimately, the court concludes that a sentence of thirty-five years is "sufficient, but not greater than necessary, to comply with the purposes" of incarceration. *See* 18 U.S.C. § 3553(a).

Starting with the nature of the offense, the court cannot overstate the severity of Taylor's crimes or the "grief and tragedy" he caused his community. *See* Tr. 31:7-13. Taylor spent years

---

[11] Although the Government does not raise the issue here, it argues in response to an analogous compassionate release motion involving one of Taylor's co-defendants, Keon Moses, that even if extraordinary and compelling circumstances exist, the court nevertheless lacks authority to modify Moses's sentence in this case because under 18 U.S.C. § 3594, the court was "statutorily required to impose the sentence of life imprisonment once it was recommended by the jury." Opp'n to Mot. for Compassionate Release at 8-9, *United States v. Moses*, CCB-02-0410 (D. Md. May 31, 2022), ECF 749-1. That may be true in the first instance, but as the Fourth Circuit has noted, the compassionate release statute authorizes modifying a sentence "'in *any* case' in which a prisoner satisfies certain conditions." *United States v. Bethea*, 841 F. App'x 544, 555 n.13 (4th Cir. 2021) (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)); *see also United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022) (a "mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release"). Accordingly, the court may, as appropriate, grant compassionate release even where a jury has sentenced the petitioner to life imprisonment without the possibility of release.

furthering a violent conspiracy to distribute illegal and dangerous drugs, ultimately resorting to deadly force to accomplish his illicit ends. These crimes "rank among the most serious offenses imaginable" and warrant a correspondingly severe sentence. *See* Mem. and Order at 10, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471.

On the other hand, Taylor's personal characteristics counsel restraint. Taylor was conscripted into the drug trade at the age of just fifteen after an upbringing under drug-addicted parents that was marked by neglect, domestic violence, and exposure to drugs and violence. From his initiation as a street dealer, Taylor's conduct escalated to a pattern of violent acts that culminated just months after he turned eighteen. An upbringing like Taylor's, and his youth both at the time he entered the conspiracy and over the course of his participation in it, mitigate his culpability and caution against imposing a life sentence for these crimes committed "in the 'immaturity, irresponsibility, impetuousness, and recklessness' of youth." Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471 (quoting *Miller*, 567 U.S. at 476).

With time, Taylor has exemplified the notion that an adolescent's character "is not as well formed as that of an adult," *Roper*, 543 U.S. at 570, and that young people retain a "greater prospect[] for reform," *Miller*, 567 U.S. at 471. At the outset of his period of incarceration—while still in his early twenties—Taylor incurred a series of disciplinary infractions, but those have dissipated as he has matured over the course of his sentence. *See* Suppl. Mot. for Compassionate Release Ex. 8, ECF 733-8. Correspondingly, as he has aged, Taylor has increasingly pursued self-improvement, largely through faith. Officials describe him as a "model participant[] in religious programming" who has become the "lead representative for the Sunni Muslim community" in his facility. *Id.* Ex. 6, ECF 733-6. Similarly, peers have testified extensively to his religious leadership,

and the positive impact of that leadership, in the prison community, explaining that he has saved "a lot of people in" the facility "from self destruction." *See id.* Ex. 7, ECF 733-7.[12] Taylor himself acknowledges that as a young man, his "heart was sick with the disease of Ignorance," but explains that his "present condition is a testament that there is a cure for this sickness." *See id.* Ex. 1, ECF 733-1. As evidence of this maturation, Taylor now "own[s] responsibility for [his] actions" and exhibits remorse for the harm he inflicted, an acceptance of responsibility he was unable to assume as a young man at sentencing. *See id.*[13]

Turning to the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, protect the public, and provide rehabilitative services, the court is satisfied that a thirty-five-year sentence appropriately fulfills these objectives. As the court has explained, Taylor committed an offense of the utmost severity, and a correspondingly exacting sentence is warranted to underscore the seriousness of his actions, promote general deterrence, and prevent him "from creating any more victims." *See* Tr. 31:17. A sentence of thirty-five years vindicates these interests and accounts for the extent of Taylor's violence relative to other similarly situated defendants. There is also no doubt that thirty-five years is a severe punishment—particularly for a defendant sentenced at age twenty—that courts in this District have agreed conveys, and responds to, the gravity of his offense. Such a sentence also ensures Taylor will be released at an age when recidivism becomes dramatically less likely, and the risk of endangering the public correspondingly less acute.[14] At the same time, it affords

---

[12] Taylor has also earned his GED while incarcerated and completed numerous other educational courses. Suppl. Mot. for Compassionate Release Ex. 5, ECF 733-5.

[13] The court also acknowledges Taylor's apology for his conduct at the trial in this case.

[14] *See The Effects of Aging on Recidivism Among Federal Offenders*, U.S. Sentencing Comm'n (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

appropriate opportunity for rehabilitation, which Taylor's record indicates he will have amply satisfied.

Finally, the court accounts for the Guideline sentence and the need to avoid unwarranted sentencing disparities among similarly situated defendants. As discussed, Taylor faces a Guideline sentence of life imprisonment. Such a sentence would, however, represent a gross disparity between Taylor's sentence and the thirty-year-range sentences typically imposed upon other young men convicted of drug-related killings. It would also be out of step with the sentences of Taylor's co-defendants, Aaron Foster and Keon Moses, whose terms the court is reducing to a similar range.[15]

In sum, the § 3553(a) factors favor reducing Taylor's sentence to thirty-five years.[16]

## CONCLUSION

For the reasons stated above, the court concludes that the severity of Taylor's sentence presents an extraordinary and compelling circumstance warranting a reduced sentence and that the § 3553(a) factors also favor such a reduction. The motion for compassionate release will therefore be granted, and the court will reduce Taylor's sentence to thirty-five years. It will achieve this by modifying Taylor's sentence to twenty years on Count One and to thirty-five years on Count Six.[17] The court leaves in place his ten-year sentence on Count Eight, to be served concurrently with the

---

[15] The court is reducing Foster's sentence to thirty-two years and Moses's sentence to thirty-five years.

[16] Although the court "fully support[ed] the jury's decision" of "life in prison" at Taylor's sentencing, it supported that sentence as an alternative to a sentence of death, and in the context of charging and sentencing practices at the time. *See* Tr. 31:18-25. Given the developments in charging practices, sentencing discretion, and the role of youth in criminal punishment over the intervening twenty years, the court now believes a thirty-five-year sentence is a "just" punishment. *See* Tr. 31:24.

[17] The court reduces the sentence on Count One to twenty years for the reasons explained in its related opinion on Aaron Foster's motion for resentencing under Section 404 of the First Step Act.

preceding counts. All other terms of his original sentence, including his five years of supervised

release, will remain the same.[18]

A separate order follows.


___July 7, 2023___                                    _____/s/_____
Date                                                  Catherine C. Blake
                                                      United States District Judge

---

[18] As a result of this conclusion, the court will deny as moot Taylor's motion for resentencing under the First Step Act, ECF 730.